**Frank E. FISHER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 00–740C.**

United States Court of Federal Claims.

July 28, 2006.

---

nel P. Christopher Clark, Air Force Legal Services Agency, General Litigation Division, of counsel.

## OPINION

BRUGGINK, Judge.

Pending after remand [1] in this request for disability retirement from the Air Force are the parties' cross-motions for summary judgment on the administrative record pursuant to RCFC 56.1. *See Bannum, Inc. v. United States,* 404 F.3d 1346, 1357 (Fed.Cir.2005). Plaintiff asks the court to review a decision of the Air Force Board for Correction of Military Records ("AFBCMR" or "Board"), denying him placement on the Temporary Disability Retirement List ("TDRL"). Plaintiff requests a retroactive reinstatement to active duty as of January 1, 1997, and entry of a money judgment in his favor for medical disability pay from that date to the present.[2] The matter has been fully briefed. Oral argument was heard on June 27, 2006. For reasons set out below the court grants defendant's motion.

## BACKGROUND [3]

Dr. Frank Fisher began his career as a Reserve Officer in the United States Air Force ("USAF") in September 1989. He served as a physician, and, at least for a time, more specifically as a flight surgeon. His rank was Lieutenant Colonel during the events that relate to this case. He was released from active duty on December 31, 1996. He continued to serve in the USAF Reserve on a Reserve Commission until September 7, 2001 when he was discharged from

J. Byron Holcomb, Bainbridge Island, Washington, for plaintiff.

Douglas K. Mickle, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, argued for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Deputy Director, Lieutenant Colo-

1. We originally dismissed for lack of jurisdiction and because we deemed the question of fitness for duty non-justiciable. *See Fisher v. United States,* No. 00–740C (Fed.Cl. Jan.7, 2002) (unpublished). That dismissal was reversed. *Fisher v. United States,* 402 F.3d 1167 (2005). The Federal Circuit concluded that this court has jurisdiction and that the matter is justiciable.

2. Under AFI 36–3212 paragraph 3.24.1, the Physical Evaluation Board ("PEB") may place a service member on the TDRL if it finds that the disability is "permanent in character, but not stable in degree." The service member remains on the TDRL for a period of time for the purpose of allowing the condition to stabilize. At the end of the period, the service member is either given a disability rating and retired or reinstated into active duty. Because plaintiff is seeking review of a decision from over five years ago which denied him placement on the TDRL, there is no need for him now to again request to be placed on the TDRL because he would have been given a disability rating and been retired by now.

3. The facts are drawn from the administrative record as well as from materials contained in the appendices to the parties' briefs. All of these materials were filed without objection.

all appointments in the Air Force for physical disqualification.

During his time spent on active duty, Dr. Fisher went before three Medical Evaluation Boards ("MEB"). The first MEB took place in May 1994. It examined Dr. Fisher's complaints of pain in his left shoulder and referred him to an Informal Physical Evaluation Board ("IPEB") to determine if his condition made him unfit. The IPEB determined that Dr. Fisher's medical condition did not make him unfit for his office, grade, rank, or rating. He continued serving on active duty.

The second MEB took place in September 1995. At the time of this evaluation, plaintiff was no longer serving as a flight surgeon, but in a medical research position as Chief, Clinical Sciences Research Support Branch. Plaintiff was not on flying status at the time. The report noted, among other conditions, "[c]hronic left wrist and hand pain (non dominant arm) secondary to left wrist synovitis, currently resolved. . . . [a]llergic rhinitis dating to 1980." AR 10. Dr. Peter Murray examined plaintiff in connection with that MEB. After noting plaintiff's wrist pain, he remarked that "patient is concerned that he will not be able to perform litter carries or do push-ups or lift heavy objects in a deployment situation." Administrative Record ("AR") 11. He concluded that "[t]his patient probably could not perform litter carries or CPR chest compressions with the left hand. I would assume he would be fully retainable in his current position as long as these activities were avoided." AR 12.

The September 1995, MEB report and underlying evaluations were reviewed by the IPEB in October 1995. The IPEB found that the chronic pain in Dr. Fisher's left wrist and hand made him unfit for continued military service. The IPEB recommended that he be discharged with severance pay with a ten-percent disability rating. Dr. Fisher appealed this decision to the Formal Physical Evaluation Board ("FPEB"). While the record is not entirely clear, it appears that Dr. Fisher agreed with the finding of

unfitness, but disagreed with the rating—contending it was too low.

At some point after the IPEB's recommendation but before the FPEB reviewed his case, Dr. Fisher was diagnosed by Dr. Jay Higgs with seronegative arthritis. The FPEB reviewed the medical reports and, disagreeing with the IPEB, found Dr. Fisher fit for continued military service. The FPEB found that Dr. Fisher was routinely performing all of his duties and recommended that he be returned to duty. It made no mention of the seronegative arthritis diagnosis in its report.[4] Dr. Fisher did not further challenge this report.

At the time of the FPEB evaluation, that board had before it Dr. Fisher's job performance, including his Field Grade Officer Performance Report for the period of July 11, 1995 through July 10, 1996, covering his work as a researcher. He met the standards for each of the performance factors for that position. The report stated that he "[m]ade a major contribution as the researcher and author of a technical paper on a major therapeutic agent," including performing "a comprehensive literature review of over 160 articles addressing the affects of flight safety," "author[ing] the technical paper and participat[ing] in extensive discussions crafting policy recommendation." AR 4. Additionally, the report described Dr. Fisher as "a bright and highly motivated medical researcher who is committed to quality science." His performance report for the Chief position for the preceding one year period was similarly successful.

In June 1996, Dr. Fisher went before a third MEB, which considered the effect of the diagnosis of seronegative arthritis. This third MEB did not refer Dr. Fisher to a PEB, but instead recommended that he be returned to service. Dr. Fisher did not request that this decision be reviewed by the IPEB. He remained on active duty until December 31, 1996, when his active duty com-

4. During oral argument, counsel for plaintiff indicated his assumption that the diagnosis was available to the FPEB.

mitment expired. He was voluntarily transferred to the Air Force Reserves.[5]

After his transfer, Dr. Fisher applied to the Department of Veterans Affairs ("VA") for disability compensation. In March 1997, the VA found that his rheumatoid arthritis was forty-percent disabling and his degenerative joint disease was twenty-percent disabling. Both disabilities were found to be service related and led to a combined disability rating of fifty percent. The VA found that other conditions Fisher complained of—allergic rhinitis, asthma, high frequency hearing loss, tinnitus, and major depression—were not service related and it assigned no disability rating to those conditions.

After the initial findings of the VA, Dr. Fisher applied again for disability compensation based on depression. In June 1997, the VA found his depression to be ten-percent disabling. In October 1997, Dr. Fisher applied for, and was granted, an increase in the disability rating for his depressive disorder. The rating was increased to thirty percent.

In December of 1999 Dr. Fisher applied for relief to the AFBCMR, alleging that the various PEBs should have found him "unfit for duty" and granted him a medical discharge. He asked that his Air Force records "be corrected to show him as medically disabled with at least a 60% disability rating," as of his date of release from active duty, and, as a result, "that he ... be placed on [Temporary Disability Retirement List] in accordance with DoD and Air Force regulations as well as statute." AR 8.

In evaluating the application, the Board sought the recommendation of the Air Force. Mr. Norman Saucier, of the USAF Physical Disability Division, gave the following advice:

> The policy in effect at the time of [Fisher's] scheduled separation in 1996 was that members who were referred to the disability evaluation system during their last year of service had to overcome the "presumption of fitness." This doctrine held that a member's continued performance of duty until their scheduled *separation* or *retirement* created a presumption that the member was fit for continued active service.... Member remained on extended active duty until 31 Dec 1996; at which time he was voluntarily transferred to the Reserves of the Air Force. Evidence that applicant was fully capable of performing all of his assigned military duties is attested to in his [performance reports] which reveal nothing but laudatory comments concerning his duty performance and reflect the highest ratings attainable.

*Id.* at 172. Mr. Saucier's reference to a presumption of fitness is drawn from Air Force Instruction ("AFI") 36–3212,[6] which provides, at paragraph 3.17, that "[t]he PEBs will presume a member fit if he or she has been able to do his or her duty satisfactorily in the 12 months before a scheduled retirement or normal separation date."[7] That

---

5. In his reply brief, plaintiff contends that this transfer was involuntary, because plaintiff's active duty commitment could have been extended. It is not clear how plaintiff's assertion that he wished to remain in active service could, if true, be legally actionable. Plaintiff's active duty commitment was not prematurely terminated and he had no right to continued service. Plaintiff's citation to *Murphy v. United States*, 69 Fed.Cl. 593 (2006), for the proposition that a service member can only voluntarily terminate his position by resignation or retirement is inapposite. *Murphy* dealt with a service member who resigned from her position and then later claimed that her resignation was involuntary due to duress. Plaintiff also contends that the issue of voluntariness "arose in the prior jurisdictional motion filed [by] the Air Force, which the [Federal Circuit] laid to rest." Plf.'s Reply at 14. The decision of the Federal Circuit dealt only with jurisdictional issues. The court did not decide any substantive issues. In any event, the Federal Circuit noted that Dr. Fisher's release from active duty was "in the normal course," "after completion of his active duty service commitment." *Fisher*, 402 F.3d at 1170. Additionally, plaintiff's Certificate of Release or Discharge from Active Duty states that the reason for his separation was "completion of required active service." AR 9.

6. This instruction, titled "Physical Evaluation for Retention, Retirement, and Separation," was promulgated on June 14, 1994 pursuant to the Secretary of the Air Force's authority under 10 U.S.C. § 1201 (2000).

7. Mr. Saucier also noted that Dr. Fisher's petition was possibly based upon a confusion between the Air Force and the VA's disability rating systems:

> It appears the applicant's request for a disability retirement is primarily due to a common

presumption, however, can be overcome, insofar as relevant here, if "a preponderance of the evidence establishes that the member was physically unable to do the duties of his or her office or grade because of disability."[8]

This instruction, in turn, is an implementation of 10 U.S.C. § 1201 (2000), which provides, in relevant part:

> Upon a determination by the Secretary concerned that a member [on active duty] is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member . . .

Section 1201 gives the Secretary of the Air Force discretion to retire service members and sets the parameters for when the Secretary has the discretion to do so.

The AFBCMR reviewed Dr. Fisher's request and concluded that "[T]he applicant has not overcome the presumption of fitness required for placement on the TDRL." AR 4–5. The Board concluded that there was "[i]nsufficient relevant evidence presented to demonstrate the existence of probable error or injustice," and denied Dr. Fisher's application for relief.

Following the adverse decision of the AFBCMR, Dr. Fisher filed suit in this court. His complaint alleges that the actions of the Secretary of the Air Force and the AFBCMR were contrary to applicable statutes, rules, and regulations. He seeks reinstatement to active duty, placement in disability retirement status effective January 1, 1997, and award of medical retirement back pay from that date, as well as the correction of his records to reflect such actions.

## DISCUSSION

We review decisions of the Board to determine if they are "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (2005). For the reasons set out below, we conclude that the decision below should not be overturned.

Plaintiff's argument is confusing, but we have attempted to organize it into three types of alleged errors in the AFBCMR decision, each of which he contends would be grounds for reversal: first, that the Board did not afford him the same procedural rights to attempt to establish entitlement to medical disability as other non-physician applicants; second, that the Board ignored certain evidence, including his diagnosis of seronegative rheumatoid arthritis; and third, that the Formal PEB should not have found him fit.

### I. Plaintiff's Procedural Rights

Plaintiff's first argument is that the Board never dealt with the merits of his disability because it improperly treated medical doctors in a different fashion than non-physician applicants. His argument is based on the Board's description of the recommendation of Dr. Frederick Hornick, Chief Medical Consultant to the AFBCMR:

> The Chief Medical Consultant, AFBCMR, reviewed the application and states that as a physician, the applicant falls under different guidelines as to what constitutes unfitness and eligibility for consideration in the disability evaluation system. . . . The military has long held that the criteria to satisfy the definition of unfitness in the case of a medical officer is permanent re-

---

misunderstanding on the differences between Titles 10 and 38 of the United States Code. Although the Air Force is required to rate disabilities in accordance with the VA Schedule for Rating Disabilities, the [VA] operates under a totally separate system with a different statutory basis. In accordance with Title 38, USC, the VA rates for any and all service connected conditions, to the degree they interfere with future employability, without consideration of fitness. Whereas under Title 10, USC, the Air Force rates a member's disability at the time of separation.
*Id.* at 2–3.

8. Paragraph 3.17 states that the presumption can be overcome in the following circumstances:

● When a preponderance of evidence establishes that the member was physically unable to do the duties of his or her office or grade because of disability, or

● When acute or grave illness, severe injury, or other physical deterioration occurs just before, or at the same time as, a scheduled nondisability retirement, separation, or discharge and causes the member to become physically unfit.

moval of the medical officer's credentials to practice medicine.

AR 23–24.

Dr. Hornick's report, in turn, includes the following statement:

[A]s a physician, the applicant falls under different guidelines as to what constitutes unfitness and eligibility for consideration in the Medical Disability Evaluation System (MDES). The fact that he was diagnosed with several conditions, both physical and mental, does not mean that he automatically would be considered unfit for duty and therefore eligible for a disability separation or retirement. . . . The military has long held that the criterion to satisfy the definition of unfitness in the case of a medical officer is permanent removal of the medical officer's credentials to practice medicine. . . . Such action is appropriately taken by the medical treatment facility commander whenever an impaired physician's physical or mental condition poses a clear and present danger to patients entrusted to his or her care.

AR 170. Dr. Hornick elsewhere states that "[t]he criteria for fitness of a medical officer are clearly delineated in Department of Defense ('DODI') 1332.38."

Although DODI 1332.38 does indeed set up a specialized test for disability retirement for medical officers, our examination of the Instruction reveals no reference to loss of medical certification as a test.[9] Instead, the requirement for doctors is the following:

[A] medical officer in any grade shall not be determined unfit because of physical disability if the member can be expected to perform satisfactorily in any assignment appropriate to his or her grade, qualifica-

tions, and experience. Thus, the inability to perform specialized duties or the fact the member has a condition which is cause for referral to a PEB is not justification for a finding of unfitness.

DODI 1332.38 E3.P3.4.2.

Plaintiff is thus correct that the instruction makes separate reference to physicians, but this reference is fully consistent with the more general test set out in the statute and with the presumption of fitness in Air Force Instruction 36–3212. Plaintiff, in short, had to demonstrate that he was unable to perform as a physician. The Board did not disqualify Dr. Fisher from disability retirement because he is a doctor, but because it concluded that he had not overcome the presumption that he could continue, in 1996, to perform in some capacity as a physician.[10]

## II. Evidence Before the Board

Plaintiff argues that the Board's conclusion of fitness was unsupported by the evidence. He points specifically to his 1995 arthritis diagnosis, his fitness reports, and a profile showing that he failed a flying physical in 1994. With respect to his diagnosis of rheumatoid arthritis, he argues that this diagnosis conclusively establishes his unfitness, under AFI 48–123. That instruction, however, merely requires that active duty members afflicted with one of many listed conditions, including rheumatoid arthritis, go through MEB processing. Dr. Fisher was processed by an MEB.

We have quoted from Dr. Fisher's fitness reports. Rather than supporting his argument, they constitute strong evidence in support of the Board's conclusion that he was able to perform as a physician in 1995 and 1996. With respect to the physical Dr. Fish-

9. Plaintiff does not contest the accuracy of Dr. Hornick's description of Air Force practice with respect to physicians, or that he was not decertified as a physician. We understand his argument to be that the Board announced a per se rule that physicians are ineligible for disability retirement. It plainly did not do so. Although the Board accepted Dr. Hornick's analysis, we do not read the decision as intending to deviate from the standard set out in DODI 1332.38, which requires physicians to demonstrate that they are disabled from functioning as a physician in any capacity.

10. Plaintiff cites the Federal Circuit decision for the proposition that "[m]edical doctors are not disqualified from a medical disability by virtue of that status standing alone." Pl.'s Mot. at 15. We are unable to find such a statement there. In any event, plaintiff misconstrues the decision of the Federal Circuit if he understands that court to have reached the merits of Dr. Fisher's disability processing. The court only addressed jurisdictional issues. *Fisher*, 402 F.3d at 1169. The Federal Circuit did not address the level of unfitness required for a disability retirement.

er failed in 1994, that physical was for the limited purpose of determining whether he would retain his flight status. The fact that he lost that status is not direct evidence that he was otherwise unable to perform the duties he was assigned as a researcher.

Whether based on a presumption arising from satisfactory performance within his final year of service, or simply on the evidence that he was fit to perform his assigned duties, the result is the same. The Board decision was based on substantial evidence.

Plaintiff also uses the fitness reports to support a different argument, namely, that his "office" in the Air Force, for purposes of 10 U.S.C. § 1201 and AFI 36–3212, was that of "Aerospace Medicine Physician." He then points out that his fitness reports reveal that he was not acting as an Aerospace Medicine Physician. Because he could not perform the specific duties of a flight surgeon, plaintiff argues that he should have been found unfit. What these and other documents refer to, however, are not an "office," but plaintiff's primary specialty. For example, Dr. Fisher's Certificate of Release or Discharge from Active Duty, shows his primary specialty to be "Aerospace Medicine Physician." AR 9.

Plaintiff's argument assumes that his primary specialty is his "office" for purposes of determining whether he is unfit within the meaning of section 1201. We disagree. Many military statutes and regulations use the terms "grade," "rank," and "office." *See, e.g.,* 10 U.S.C. §§ 1201, 1216; AFI 48–123. While "grade" and "rank" are clearly defined in title 10 of the United States Code § 1201(b)(7–8), the title pertaining to military matters, we have not been able to locate a general definition for the term "office" in a military statute. It is, however, defined in AFI 36–3212 as "[a] position of duty, trust, authority to which an individual is appointed." AFI 36–3212 at attachment 1. The term has also been construed to mean grade or rank. In *Wood v. United States,* for example, the court described the claimant as holding the "office" of major-general. 15 Ct.Cl. 151, 1800 WL 1048 (1879), *aff'd* 107 U.S. 414, 18 Ct.Cl. 761, 2 S.Ct. 551, 27 L.Ed. 542 (1883)

("The titles or names of the offices to which general and line officers of the Army are appointed—general, lieutenant-general, major-general, brigadier-general, colonel of cavalry or infantry, lieutenant-colonel, major, captain, and lieutenant—are employed also as the designation of rank ...."). *See also* Advancement of Staff Officers in Navy, 31 U.S. Op. Att'y. Gen. 80 ("While 'grade' has the same meaning as 'office,' 'rank' is merely a classification to fix the position of officers with respect to other officers in the same or in other grades, as to command, precedence, privilege, or pay."). While it is thus not clear that the term office always refers to rank or grade, it plainly refers to a designation of more importance than a work specialty.

The fact that plaintiff was no longer capable of performing the duties of a flight surgeon thus was not sufficient to overcome the presumption of fitness created by his satisfactory performance as a physician in another capacity. This conclusion is supported by AFI 48–123, which provides, in part:

Members are unfit when they are clearly unable to perform the duties of their office and grade in such a manner as to reasonably fulfill the purpose of their employment on active duty. *A member is unfit for further military service when that member is not physically able to serve wherever there may be an Air Force need for the member's services.*

AFI 48–123 ¶ 3–33(c) (emphasis supplied).

In sum, because he was performing satisfactorily as a research physician at the time of his release from active duty, he not only failed to meet the requirements of unfitness as a medical officer under DODI 1332.38, he plainly was capable of maintaining his office as a Lt. Colonel.

Plaintiff also argues that the Board was bound by the VA's finding that he was unfit. As the Board noted in its review of the Air Force recommendations in Dr. Fisher's case, the Board is not bound by the VA's findings. The VA operates under title 38. It compensates former service members based on the

likelihood that a disability will make it difficult for them to seek civilian employment in the future. The Air Force, on the other hand, operates under title 10. It rates and compensates members based on their ability to perform their then-present Air Force duties. These two systems thus operate under different statutory authorities and rate member's disabilities based under different standards.

### III. The FPEB Finding of Fitness

Plaintiff also argues that the presumption applied by the Board could not have been applied by the FPEB because the FPEB considered his entitlement more than twelve months before his active duty release date. Plaintiff is correct that the FPEB made its November 15, 1995 decision more than twelve months prior to his release from active duty. The FPEB, however, did not find Dr. Fisher fit based on the presumption. Rather, the FPEB's recommendation to the Secretary was based on its finding that plaintiff was "fully capable of performing all of his assigned duties and [was] doing so routinely." The AFBCMR decision was based on plaintiff's performance within his last year of service.

Plaintiff also argues that the Board erred by finding him fit in the face of the IPEB's finding that he was unfit. Plaintiff's argument seems to be that it was improper for the FPEB to make a finding in conflict with the IPEB and wrong for the Board to affirm the FPEB's finding. We disagree. The Board's review is de novo, Sawyer v. United States, 930 F.2d 1577, 1581–82 (Fed.Cir. 1991), and it is not bound by the findings of either formal or informal PEBs.

### CONCLUSION

We have no basis for overturning the Board decision. It was not arbitrary or capricious, it was not in violation of applicable statutes or regulations, and it was based on substantial evidence. Defendant's motion for judgment on the administrative record is therefore granted. Plaintiff's motion is denied. The Clerk is directed to dismiss the complaint. No costs.