**Frank E. FISHER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–740C.

United States Court of Federal Claims.

March 19, 2008.

J. Byron Holcomb, Bainbridge Island, Washington, DC, for plaintiff.

Douglas K. Mickle, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director, for defendant.

OPINION

BRUGGINK, Judge.

Pending in this request for disability retirement from the Air Force are the parties' renewed cross-motions pursuant to Rule 52.1

of the Rules of the United States Court of Federal Claims ("RCFC") for judgment on the administrative record. The renewed cross-motions were triggered by the court's grant, in part, of plaintiff's motion for reconsideration of our decision previously granting judgment on the record for defendant. The court reopened the matter in part and remanded to the agency for a limited purpose. After the agency's decision on remand, the parties filed these renewed motions. The matter has been fully briefed. For the reasons set out below, the court denies plaintiff's motion and grants defendant's motion.

## BACKGROUND [1]

Dr. Frank Fisher began his career as a Reserve Officer in the United States Air Force ("USAF") in September 1989. He served as a physician and, at least for a time, as a flight surgeon. His rank was Lieutenant Colonel during the events that relate to this case. He was released from active duty on December 31, 1996. In December 1999, Dr. Fisher applied to the Air Force Board for Correction of Military Records ("AFBCMR" or "Board"), alleging that medical boards before which he appeared should have found him unfit for duty and granted him a medical discharge. He sought a correction of his records to reflect a medical disability based on rheumatoid arthritis and a discharge for medical disability as of December 31, 1996, his last day of active duty. The AFBCMR denied Dr. Fisher's claim. He continued to serve in the USAF Reserve on a Reserve Commission until September 7, 2001, when he was discharged from all appointments in the Air Force for physical disqualification.

Dr. Fisher filed his complaint here in 2000, seeking retroactive reinstatement to active duty as of January 1, 1997, and entry of a money judgment in his favor for medical disability pay from that date to the present. We originally dismissed the action for lack of jurisdiction and because we deemed the question of fitness for duty non-justiciable.

See Fisher v. United States, No. 00–740C (Fed.Cl. Jan. 7, 2002) (unpublished). That dismissal was reversed. Fisher v. United States, 402 F.3d 1167 (2005). The Federal Circuit concluded that this court has jurisdiction and that the matter is justiciable. After remand from the Federal Circuit, we issued an opinion on July 28, 2006, granting defendant's cross-motion for judgment on the administrative record. Fisher v. United States, 72 Fed.Cl. 88 (2006).

In our 2006 decision, we upheld the AFBCMR determination that plaintiff had not overcome the presumption of fitness required for placement on the Temporary Disability Retirement List ("TDRL"). Id. at 95. Under Air Force Instruction ("AFI") 36–3212 ¶ 3.24.1 (1994), the Physical Evaluation Board ("PEB") may place a service member on the TDRL if it finds that the disability is "permanent in character, but not stable in degree." The service member remains on the TDRL for a period of time for the purpose of allowing the condition to stabilize. At the end of the period, the service member is either given a disability rating and retired or reinstated into active duty. Placement on TDRL offers a member the privileges and benefits of permanent retirement for a maximum period of five years. 10 U.S.C. § 1210 (2000). In our 2006 decision, we first noted that while the Chief Medical Consultant to the AFBCMR, Dr. Frederick Hornick, may have given erroneous advice to the AFBCMR, plaintiff had not overcome the presumption that he could continue to perform in some capacity as a physician under Department of Defense Instruction ("DODI") 1332.38 (1996) and AFI 36–3212. Second, we found that enough evidence existed to support the Board's determination of fitness to perform as a physician. We also rejected plaintiff's narrow definition of "office" in 10 U.S.C. § 1201 (defining the standard for military disability) to mean "Aerospace Medicine Physician." Accordingly, we upheld the AFBCMR's determination that Dr. Fisher

---

1. The facts are drawn from the Administrative Record ("AR") filed on March 30, 2001, as supplemented by the Administrative Record filed on June 29, 2007 ("AR2"). Only the facts relevant to plaintiff's motion for reconsideration and the

parties' cross-motions for judgment on the administrative record are presented. For a more comprehensive factual background, see Fisher v. United States, 72 Fed.Cl. 88 (2006).

was fit to perform as a physician and, as such, was not qualified to receive disability retirement.

Plaintiff timely filed a motion for reconsideration and for entry of an amended judgment, claiming three errors in the court's opinion. First, he contended that the AFBCMR denied temporary disability retirement in 2000 in reliance on the Board Medical Consultant's erroneous advice that permanent removal of a medical license is required for a medical officer to be found unfit. Second, the AFBCMR relied on DODI 1332.38, which was ineffective when the Disability Evaluation System ("DES") processed plaintiff's case. Third, the term "office" in 10 U.S.C. § 1201 and in the relevant Department of Defense ("DOD") regulation should be construed to mean plaintiff's primary speciality as an Aerospace Medicine Physician. Only the first of these arguments was arguably new. Plaintiff repeated his request for reinstatement to active duty, placement in disability retirement status effective January 1, 1997, award of medical retirement back pay from that date, and correction of his records to reflect such actions.[2]

Oral argument on plaintiff's motion for reconsideration was heard on October 27, 2006. After oral argument we granted reconsideration to the limited extent of reopening the matter and remanding to the AFBCMR for it to clarify the exact basis of its reasons for and the legal standards it employed in denying relief to Dr. Fisher.[3] We did so because of our inability to determine with certainty whether the AFBCMR's decision was based on the erroneous comment by the Board Medical Consultant that permanent removal of a medical license is required for a medical officer to be found unfit. While plaintiff had the opportunity to present his other claims in his first appearance before the Board, and then before the

court, defendant did not object to the AFBCMR addressing plaintiff's other arguments during the AFBCMR's second review, namely the inapplicability of DODI 1332.38 and the definition of "office" for purposes of making a determination of unfitness. Thus, the court allowed but did not require the AFBCMR to respond to such arguments.

On remand, the AFBCMR obtained new medical and legal opinions and reviewed the evidence of record as well as additional documentation provided by plaintiff's counsel. AR2 8. The question before the Board, however, remained the same, namely whether plaintiff had presented sufficient evidence to demonstrate the existence of error or injustice to warrant temporary disability retirement as of December 31, 1996. AR2 7. The AFBCMR concluded, "based on a totality of the evidence presented," that plaintiff had presented "insufficient relevant evidence ... to demonstrate the existence of error or injustice to warrant favorable consideration of the requested relief." AR2 7. The Board acknowledged that the Medical Consultant erred in stating "that permanent removal of a medical license is required for a medical officer to be found unfit." AR2 8. However, it was "not convinced that [the first AFBCMR's] decision to deny the application was based solely on the previous BCMR Medical Consultant's erroneous opinion." *Id.* In any event, the AFBCMR reviewed the record anew and agreed with the previous decision that "the applicant had not overcome the presumption of fitness required for placement on the TDRL." *Id.*

The AFBCMR explained that while physicians who meet the applicable requirements may receive disability retirement, "a given physical impairment that is unfitting for members in other military specialities resulting in disability discharge may not be unfitting for continued service in flag and medical

**2.** Under AFI 36–3212 ¶ 3.24.1, the PEB may place a service member on the TDRL if it finds that the disability is "permanent in character, but not stable in degree." The service member remains on the TDRL for a period of time for the purpose of allowing the condition to stabilize. At the end of the period, the service member is either given a disability rating and retired or reinstated into active duty. Placement on TDRL

offers a member the privileges and benefits of permanent retirement for a maximum period of five years. 10 U.S.C. § 1210.

**3.** While no written order was issued granting the motion for reconsideration, the order remanding the matter to the AFBCMR had the effect of granting the motion for reconsideration on the limited issue specified in the order.

officers." *Id.* If a medical officer "can be utilized in an assignment commensurate with their grade, qualifications, and experience," then the Air Force will not find them unfit. *Id.* Thus, "a permanent revocation or significant limitation of clinical privileges due to a medical condition does not have to occur prior to, or as a condition for, referral of a physician into the DES for evaluation." *Id.*

The AFBCMR noted that prior to Dr. Fisher's release in 1996 from active duty and transfer to the Air Force Reserve, "he was fully capable of performing all of his assigned duties and had not overcome the presumption of fitness based on his satisfactory performance during the past 12 months." AR2 9. His duties during this time period included conducting medical research. AR 4. He "[m]ade a major contribution as the researcher and author of a technical paper on a major therapeutic agent," including performing "a comprehensive literature review of over 160 articles addressing the affects of flight safety," "author[ing] the technical paper and participat[ing] in extensive discussions crafting policy recommendation." *Id.* Similarly in 2001, after Fisher was no longer medically qualified for continued service due to rheumatoid arthritis and subsequent complications, he was still "fully capable of performing all of his assigned duties." AR2 9.

While our order remanding the matter to the AFBCMR did not require it to address plaintiff's other arguments during reconsideration, the AFBCMR chose to briefly address them. With respect to the assertion that invalid DOD regulations were used in evaluating Dr. Fisher for disability retirement, the AFBCMR concluded that the DOD regulations originally used to evaluate Dr. Fisher's case in previous years, DODI 1332.38 and DODD 1332.18 (1996), "were in effect and applicable to the Air Force at the time of the Board's initial denial and at all times relevant." AR2 369. The Board concluded no error existed with respect to the DOD regulations employed to evaluate Dr. Fisher's case.

With respect to the argument that "office" in 10 U.S.C. § 1201 or DODD 1332.18 was misinterpreted by the court, the USAF/JAA in the memorandum dated March 28, 2007, agreed with this court that " '[office] plainly refers to a designation of more importance than a work specialty.' " AR2 370 (quoting *Fisher,* 72 Fed.Cl. at 94). Upon the USAF/JAA's recommendation, AR2 370 n.10, however, the Board declined to "render[ ] a determination as to the definition of 'office' " because such a task is beyond the Board's purview. AR2 9.

## DISCUSSION

Defendant argues that the question after remand is whether the 2007 AFBCMR's redetermination that plaintiff did not, in 2000, overcome the presumption of fitness, is arbitrary or capricious, in violation of applicable statutes or regulations, or not based on substantial evidence. In essence, defendant contends that, if the court has any concern that the original Board decision was tainted by reliance on an incorrect legal standard, the error would have been harmless, because the latest Board decision reconsidered all evidence available in 2000 and came to the same conclusion. Plaintiff urges us to utilize the second AFBCMR decision only for the purposes of confirming that the first Board decision improperly relied on incorrect legal advice, and to ignore it insofar as the most recent decision attempted to show that any possible improper legal advice was harmless error. According to plaintiff, in other words, it is sufficient to his purposes if the Board relied on the erroneous advice, irrespective of whether plaintiff was entitled, at the time, to TDRL.

### I. The Impact of Erroneous Advice as to the Legal Standard

As defendant's argument implies, it is difficult, if not impossible, to discern what impact the erroneous advice had on the first Board decision because the membership of the Board has changed. The current Board attempted to compensate for that problem by reviewing the evidence, as of 2000, afresh. We agree with defendant that the 2007 Board decision is controlling now, although we think it has no practical impact for plaintiff. Even if the first Board decision may have been tainted by reference to an improper standard for proof of disability, plaintiff

still would have to establish that the error was prejudicial, i.e., that it affected the Board's ultimate conclusion that he had not overcome the presumption that he could continue to perform in some capacity as a physician. *Wagner v. United States*, 365 F.3d 1358, 1362 (Fed.Cir. 2004) (stating that civilian correction board's decision need not be overturned for harmless error); *Wells v. United States*, 46 Fed.Cl. 178, 183 (2000) (noting that correction board's decision may be overturned if it "materially violated" regulations thereby "prejudic[ing] the plaintiff"); *Ferrell v. United States*, 23 Cl.Ct. 562, 563–64, 568 (1991) (describing which deviations by the Air Force from standard military procedure constitute "prejudicial error"). We have been presented with no basis for overturning either the original Board's ultimate conclusion, or the second Board's reevaluation of that conclusion. The record supports the finding that plaintiff was able to continue serving as a physician. Accordingly, we cannot find that the AFBCMR's decision was arbitrary, capricious or unsupported by substantial evidence.

*II. Governing Department of Defense Regulation*

While we did not remand specifically on the issue of the governing DOD regulation, the Board chose to address this issue. In our prior opinion, we noted that the first AFBCMR determined plaintiff was not entitled to temporary disability retirement under both DODI 1332.38 (1996) and AFI 36–3212. *Fisher*, 72 Fed.Cl. at 93. Plaintiff brought to our attention in his motion for reconsideration that DODI 1332.38 was ineffective during plaintiff's release from active duty on December 31, 1996 and thus inapplicable to his case. DODI 1332.38 is dated November 14, 1996 and has no predecessor, but it did not become "effective for all MEBs [Medical Evaluation Boards] [until] 120 days after the date of this instruction." There was a brief period, in other words, during which no instruction was in place.

Plaintiff asserts that because the 1996 DODI was not effective, the relevant regulation was DODD 1332.18 (1996), which, although it had been reissued in November, went into effect immediately on November 4. Nevertheless, plaintiff contends that the DODD is insufficient for defendant's purposes, because DODDs merely describe policy, while it takes an instruction to actually implement the policy.[4] It was the DODI, plaintiff points out, which specifically dealt with disability standards for medical officers,[5] while the 1996 DODD sets out general standards applicable to all officers. Because the AFBCMR may have relied on an ineffective DODI, plaintiff concludes that our prior judgment should be vacated.

Defendant agrees that DODI 1332.38 was not controlling but argues that DODD 1332.18 (1986)[6] and AFI 36–3212 were con-

---

4. To support this argument, plaintiff directs us to the definitions of DODI and DODD on the Department of Defense website. A DODI is defined as:

> a DoD issuance that implements the policy, or prescribes the manner or a specific plan or action for carrying out the policy, operating a program or activity, and assigning responsibilities.

*Dep't. of Def.*, Wash. Headquarters Servs., DoD Issuances & OSD Admin. Instructions, *What are the DoD Issuances?*, http://www.dtic.mil/whs/directives/general.html. A DODD, on the other hand, is defined as:

> a broad policy document containing what is required by legislation, the President, or the Secretary of Defense to initiate, govern, or regulate actions or conduct by the DoD Components within their specific areas of responsibilities. DoD Directives establish or describe policy, programs, and organizations; define missions; provide authority; and assign re-

sponsibilities. One-time tasking and assignments are not appropriate in DoD Directives. *Id.* Plaintiff argues from these definitions that a DODD serves a different purpose than a DODI. He concludes that a DODI is binding, whereas a DODD is not.

5. DODI 1332.38 ¶ E3.P3.4.2 specifies: "a medical officer in any grade shall not be determined unfit because of physical disability if the member can be expected to perform satisfactorily in an assignment appropriate to his or her grade, qualifications, and experience."

6. DODD 1332.18 ¶ D.2 (1986) specifies that "[t]he sole standard to be used in making determinations of physical disability as a basis for retirement or separation shall be unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred while entitled to basic pay." DODD 1332.18 (1996), which plaintiff argues is controlling, is not meaningfully

trolling during plaintiff's DES processing,[7] and were sufficient for the AFBCMR to conclude that plaintiff was not entitled to disability retirement. The 1986 version of DODD 1332.18, like DODI 1332.38, dealt specifically with how to treat medical officers. While the extent to which the Board relied on DODI 1332.38 is unclear, both the first and second Board ultimately concluded that Fisher did not overcome the presumption of fitness in AFI 36–3212, which states the fitness requirement in more general terms applicable to all members.[8] AR 172; AR2 9. Under AFI 36–3212 ¶ 1.3 "[t]he mere presence of a physical defect or condition does not qualify a member for disability retirement or discharge." AFI 36–3212 ¶ 3.17 specifies: "[t]he [Physical Evaluation Boards] will presume a member fit if he or she has been able to do his or her duty satisfactorily in the 12 months before a scheduled retirement or normal separation date." [9]

We agree with defendant that any reliance by the AFBCMR on an ineffective regulation would not have materially prejudiced plaintiff. Plaintiff and the AFBCMR agree that the 1996 version of DODD 1332.18 was effective, as was AFI 36–3212. Plaintiff failed to satisfy the standard for a determination of unfitness under either DODD 1332.18 (1996) or AFI 36–3212 ¶ 3.17.[10] While the instruction may have been more specific, the directive was independently binding and, in

any event, not inconsistent with the instruction.

### III. Definition of "Office" in 10 U.S.C. § 1201

Plaintiff also repeats his earlier argument that his "office" in the Air Force, for purposes of 10 U.S.C. § 1201 and AFI 36–3212, was that of Aerospace Medicine Physician. Plaintiff argues that he should have been found unfit because he could not perform the specific duties of a flight surgeon. Because the Air Force Regulations do not define "office," plaintiff directs us, by analogy, to Army Regulation 635–40 for a definition. Army Regulation 635–40 ¶ 4–19(d)(2) states: "The determination of physical fitness will be made by relating the nature and degree of physical disability of the Soldier to the requirements and duties that the Soldier may reasonably be expected to perform in their [sic] primary MOS ['Military Occupational Specialty']." Plaintiff concludes that under this Army Regulation, plaintiff's primary MOS is Aerospace Medicine Physician.

Each military service operates under independent regulations. We find no obligation in the Air Force to apply this Army Regulation, even by analogy. We note that while the AFBCMR refrained from defining "office," the USAF/JAA agreed with our prior opinion that "office" "'plainly refers to a designation of more importance than a work

---

different: "[t]he sole standard to be used in making determinations of unfitness due to physical disability shall be unfitness to perform the duties of the member's office, grade, rank or rating because of disease or injury."

7. Also, AFR 35–4 (1989) was in effect and controlled plaintiff's first MEB. AFR 35–4 ¶ 3–33.C.7 specifies that "[a] finding of unfitness is not based on the member's ... [i]nability to perform the full range of duties required by the member's Air Force specialty."

8. We note that the second Board asserts that DODI 1332.38 was controlling at all times. The second Board essentially agreed with the memorandum, dated March 28, 2007, of the Deputy Chief of the Administrative Law Division, Office of the Judge Advocate General ("USAF/JAA") that:

DoDI 1332.38 was applicable to the Air Force at the time of the Board's initial denial in May 2000, in December 1996, when the applicant

separated from active duty and transferred to the Air Force Reserve, and in September 2001, when the applicant was discharged for physical disqualification. DoDD 1332.18 [(1996)] was applicable to the Air Force at the time [sic] Board's initial denial, in December 1996, when the applicant separated from active duty and transferred to the Air Force Reserve, and in September 2001, when the applicant was discharged for physical disqualification. It is unnecessary for us to resolve the issue. AR2 370 n.10.

9. This presumption can be overcome "[w]hen a preponderance of evidence establishes that the member was physically unable to do the duties of his or her office or grade because of disability." AFI 36–3212 ¶ 3.17.

10. Because plaintiff has failed to overcome the presumption of fitness in AFI 36–3212 ¶ 3.17, we need not consider plaintiff's argument that 10 U.S.C. § 1201 (2000) is the governing standard.

specialty.'" AR2 370 (quoting *Fisher,* 72 Fed.Cl. at 94). Moreover, AFI 48–123 supported our characterization of "office." *See Fisher,* 72 Fed.Cl. at 94.

## CONCLUSION

We granted plaintiff's motion for reconsideration solely on the issue of whether the AFBCMR's determination was based on erroneous advice and remanded the matter to the Board. We have now reviewed the Board's remand decision on cross-motions for summary judgment on the administrative record. We conclude that the Board's denial of temporary disability retirement to plaintiff, on the ground that he had not overcome the presumption of fitness, was not arbitrary, capricious, or in violation of applicable statutes or regulations, and was based on substantial evidence. Defendant's renewed motion for judgment on the administrative record is therefore granted. Plaintiff's cross-motion is denied. The Clerk is directed to dismiss the complaint. No costs.